U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 08-00783

ADVERSARY PROCEEDING NO: 08-80028

ORDER DENYING MOTION TO DISMISS

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/30/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 07/31/2008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Protected Vehicles, Inc.,<br><br>                                    Debtor(s).<br><br>Marcus Burgio,<br><br>                                    Plaintiff(s),<br><br>v.<br><br>Protected Vehicles, Inc., PVI,<br><br>                                    Defendant(s). | C/A No. 08-00783-DD<br><br>Adv. Pro. No. 08-80028-DD<br><br>Chapter 11<br><br>**ORDER DENYING MOTION TO DISMISS** |

THIS MATTER is before the Court on Protected Vehicles, Inc.'s ("Debtor" or "Defendant") Motion to Dismiss Adversary Proceeding ("Motion"). A hearing was held in this matter on June 5, 2008. Both Debtor and Marcus Burgio ("Plaintiff") appeared by and through counsel. The complaint alleges Debtor violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et. seq.*, and seeks certification of a class of similarly situated individuals, the determination of unpaid wages and benefits covered by the WARN Act, a determination of priority status under the Bankruptcy Code and attorney fees. Plaintiff has filed, but the Court has not heard, a Motion for Class Certification for all employees similarly situated to Plaintiff.[1] A second adversary proceeding has been filed by another individual seeking similar relief, although in the form of a declaratory judgment action with a request that any award under the WARN Act be determined through the claims filing process.

---

[1] Plaintiff defines the class he proposes as "former employees of Defendant who worked at or reported to one of the Facilities and were terminated without cause on or about December 3, 2007 and within 30 days of that date, or as the reasonably foreseeable consequence of the mass layoff or plant closings ordered by Defendant on December 3, 2007."

### *Debtor's Basis for Motion to Dismiss*

The Motion to Dismiss does not seek relief based on the application of facts to the law[2]. Rather, Debtor maintains that Plaintiff's claim should be addressed through the claims allowance process and not in an adversary proceeding. The issue before the Court is one of law. May Plaintiff pursue his claim for damages under the WARN Act, and the claims of others, as an adversary proceeding?

Both parties contend that the resolution of this issue depends on the Court's characterization of WARN Act causes of action as arising on the law side or equity side of the Court. Plaintiff argues that the adversary proceeding is proper in the instant case because it is "a proceeding to obtain an injunction or other equitable relief…." Fed. R. Bankr. P. 7001(7). Defendant argues that a WARN Act cause of action arises at law and does not fall under Rule 7001(7). Rather, Defendant argues, WARN Act causes of action are for damages and therefore can only be asserted by proof of claim[3].

### *WARN Act*

The WARN Act was passed in 1988 to provide protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs, thereby providing some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. *See 20 C.F.R. § 639.3*.

---

[2] Normally, a Court will construe factual allegations in a light most favorable to the nonmoving party. *See Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-218 (4th Cir. Va. 1994)(*citing Martin Marietta Corp. v. International Telecommunications Satellite Org.*, 978 F.2d 140, 142 (4th Cir. 1992)("This court will construe factual allegations in the nonmoving party's favor and will treat them as true, but is not so bound with respect to the complaint's legal conclusions).

[3] Plaintiff filed a proof of claim on June 4, 2008, one day before the deadline for general claims, for himself and those similarly situated, in the amount of $5,075,000.00

2

The WARN Act bars employers with 100 or more employees from ordering a "plant closing" or a "mass lay-off", each as defined in the Act, unless at least sixty-days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure. *29 U.S.C. § 2101(a)(1), § 2102(a)(1).*

Failure to give the required notice renders the employer liable to each affected employee for 60 days' pay and benefits. If the employer gives its employees less than 60 days notice, the employer is liable for pay and benefits for the number of days notice was wrongfully withheld. *29 U.S.C. § 2104(a)(1).*

There are three statutorily defined exceptions or defenses to the notice requirement which can be asserted by the employer. Whether a particular defense is available, as well as the determination of whether proper notice was provided, is fact intensive, but not relevant to the present issue. For this Motion to Dismiss this Court need only determine whether an adversary proceeding is procedurally proper.

### *Case Law*

Plaintiff cites several cases in support of his proposition that an adversary proceeding is proper because WARN Act claims are equitable in nature. In *In re Cain et al. v. Inacom Corp.*, 2001 WL 1819997 (Bankr. Del. 2001) former employees of Inacom commenced an adversary proceeding by the filing of a class action complaint against their former employer to recover 60 days back pay and ERISA benefits for violation of their WARN Act rights. In making its decision the *Inacom* Court cites two district court opinions (1) *Loehrer v. McDonnell Douglas Corp.*, 1992 U.S. Dist. LEXIS 22555 (E. D. Mo. Oct. 5, 1992)(holding that a WARN Act cause of action is an equitable cause of action) and (2) *Bentley v. Arlee*

3

*Home Fashions, Inc.*, 861 F. Supp 65 (E.D.Ark.1994)(WARN Act remedies are legal, not equitable, in nature).[4] *Inacom* followed *Loehrer*, stating,

> I am inclined to follow the *Loehrer* position because it addressed an issue relevant here which the *Bentley* decision did not. Specifically, the *Loehrer* court noted that the monetary remedies specified in the WARN Act are subject to the discretionary authority of the court to reduce the award if the employer acted in good faith and had reasonable grounds for believing that the act or omission was not a violation of the WARN Act. *Loehrer*, 1992 U.S. Dist. 22555, at *8. Citing the concurring opinion of Justice Rehnquist in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 442-43, 95 S. Ct. 2362, 2385 (1975) (where "the court retains substantial discretion as to whether or not to award back pay...the nature of the jurisdiction which the court exercises is equitable."), the court concluded that the WARN Act claims sounded in equity. *Id. at *9-10*. In addition to its reliance on the *Albemarle Paper* case, the *Loehrer* court also found "that an award of back pay under the WARN Act is equitable relief because such an award is intertwined with the equitable relief of ERISA benefits." Id. at *8. The instant complaint likewise seeks ERISA benefits.

*Cain et al. v. Inacom Corp.*, *Supra.*  Plaintiff also cites a case from the United States Bankruptcy Court for the District of Arizona, *Barajas et al v. Gonzalez, Inc.*, et al, Case No. 02-15508, which cites the *Loehrer* and *Inacom* cases, among others, and concluded that WARN claims arise in equity.[5]

For the contrary position, that WARN Act causes of action arise in law, Defendant cites *Parsley v. Kunja Knitting Mills, Inc.*, 1991 U.S. Dist. LEXIS 20404 (D. S.C. Apr. 25, 1991) which dealt with whether an injunction under Fed. R. Civ. P. 65 to enjoin a defendant from dissipating its assets pending resolution of WARN Act claims could issue.  There the Court, in characterizing WARN Act causes of action, stated, "[t]here is some disagreement

---

[4] In *Loehrer* and *Bentley* the issue was whether WARN Act remedies were legal or equitable for purposes of the availability of a jury trial.

[5] Plaintiff also cites *In re RSL COM Primecall, Inc. and RSL COM U.S.A., Inc*. (Bankr. S.D.N.Y. 2001, Case Nos. 01-11457, 01-11469 and 02-12898) and *Allen et al. v. Charter Behavioral Health Systems, LLC, et al*., Case No. 00-989 through 001089 from the United States Bankruptcy Court District of Delaware.  The Court mentions these cases but gives them little consideration since each consists of one page opinions that offer no facts or analysis.  They merely deny motions to dismiss based on oral arguments of which this Court has no knowledge.

4

between the circuit courts concerning the power of a court to grant preliminary relief under Rule 65, Fed. R. Civ. Proc., to protect a damages award, where, as here, the underlying case has no equitable component, but is strictly an action at law for damages." *Id.* at *6. The South Carolina case, although unpublished and not binding as district court precedent, has persuasive value as it was issued by now Senior Fourth Circuit Court of Appeals Judge Clyde H. Hamilton.

Judge Hamilton addresses a very narrow issue. He was faced with a request for an injunction to prevent the owners of a closed textile mill from dissipating its assets pending resolution of the WARN Act case. Judge Hamilton was concerned with the propriety of issuing an injunction to protect a potential damage award. The damage award clearly rises on the law side of the court, yet he determined that issuing the injunction was proper. The case follows Fourth Circuit precedent on that issue and does not otherwise stand for the proposition that all relief under the WARN Act is on the law side of the court.

In addition to the cases cited by the parties the Court found two other opinions relevant to the present issue. The first is *Bledsoe v. Emery Worldwide Airlines,* 258 F. Supp. 2d 780 (S. D. Ohio 2003). While the quotation below is lengthy, it contains a rather detailed analysis of the issue. In determining that WARN Act claims were not entitled to a jury trial because they are equitable in nature the Court stated,

> Although the analogy is not perfect, the Court finds that the back pay contemplated by Congress in crafting the WARN Act is more like that which the Sixth Circuit held was available under ERISA [Employee Retirement and Income Security Act] in *Schwartz* [*Schwartz v. Gregori*, 45 F.3d 1017, 1021 (6th Cir.)], and that available in Title VII actions, than that which the Supreme Court recognized was available under the LMRA [Labor Management Relations Act] in *Terry* [*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 110 S. Ct. 1339 (1990)]. The LMRA provision at issue in *Terry* (§ 301(a)) gave the plaintiff therein the right to sue for breach of contract generally, and back pay was one type of legal relief he sought

5

thereunder. The WARN Act damages provision, 29 U.S.C. § 2104(a), is not nearly as broad, and it is also far less broad than that which is available under the FMLA [Family Medical Leave Act], FLSA [Fair Labor Standards Act of 1938] or the ADEA [Age Discrimination in Employment Act of 1967]. For example, whereas the FMLA states that "in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee," the employee is entitled to "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee," the WARN Act contains no such alternative damages provision. Under no set of facts is an employee suing under the WARN Act entitled to any form of relief other than back pay and lost benefits (and fees as a part of overall costs). The Court is also persuaded that its authority to reduce the entire portion of any calculated damages, 29 U.S.C. § 2104(a)(4), indicates an intention on the part of Congress to exclude the right to a jury trial. *See Curtis*, 415 U.S. at 197; *Albemarle*, 422 U.S. at 443 (Rehnquist, J., concurring).

The alleged "wrong" in this case is not Emery's act of laying off the Plaintiffs; it is its failure to give them adequate notice of its plan to do so or adequate remuneration in lieu thereof. Through the WARN Act, Congress has stated to large employers, in effect, that it is okay to lay off employees, but in return they must be given 60 days' notice or, if not, then the remuneration they would have received for the number of days for which they were entitled to prior notice. Indeed, an employer which has given inadequate notice of discharge may compensate its employees according to *29 U.S.C. § 2104(a)(1)* as they walk out the door upon their being laid off, and if it does so, it has no further liabilities to them. In essence, then, what the Plaintiffs herein are seeking is not compensation for the damages flowing from their discharge, but a reimbursement of those salaries and benefits, calculated on a per diem basis, which were due to them on the date they were laid off, in lieu of Emery's having given them proper notice of their layoffs, and which have to this point in time been wrongly withheld from them. Therefore, if Emery is indeed liable, it is so in a manner similar to that of a trustee who is liable for wrongly withholding funds, in breach of its fiduciary duty to do so. Viewed in this light, the back pay and benefits which the Plaintiffs seek are in the nature of restitution, for which no right to a jury trial exists.

Moreover, the right to lost benefits is itself probative of how the statute should be construed. ERISA allows aggrieved employees the right "to recover benefits due to him under the terms of his plan." *29 U.S.C. § 1132(a)(1)(B)*. The Sixth Circuit has consistently held that such actions are in the nature of actions for restitution, and are therefore equitable in nature, for which no entitlement to a jury trial exists. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. 1998); *Bair v. General Motors Corp.*, 895 F.2d 1094, 1097 (6th Cir.1990); *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.), *cert. denied,* 488 U.S. 826, 102 L. Ed. 2d 52, 109 S. Ct. 76 (1988);

> *Crews v. Central States, Southeast and Southwest Areas Pension Fund*, 788 F.2d 332, 338 (6th Cir. 1986). These cases are significant because the lost benefits available under the WARN Act are ERISA benefits (i.e., "benefits under an employee benefit plan described in section 1002(3) of this title"). See *29 U.S.C. § 2104(a)(1)(B); id. § 1002(3)*. The Act provides no right to sue for benefits other than those arising under an ERISA plan, and it seems unlikely that Congress would have intended plaintiffs to be entitled to a jury's determination of lost ERISA benefits under the WARN Act where they would not be entitled to one under ERISA itself.
>
> The *Loehrer* and *Cain* courts both found this fact highly relevant, the *Loehrer* court going to (sic) far as to deem the award of back pay "equitable relief because such an award is intertwined with the equitable relief of ERISA benefits." It found support for this proposition in the Supreme Court's decision in *Terry*, where the Court stated that "a monetary award 'incidental to or intertwined with injunctive relief' may be equitable." 494 U.S. at 571 (quoting *Tull v. United States*, 481 U.S. 412, 424, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987)); *see also Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92, 4 L. Ed. 2d 323, 80 S. Ct. 332 (1960) (holding that a district court could award back pay, described therein as a "reimbursement" of lost wages, pursuant to its equitable powers). In this case, back pay is not "incidental" to the award of ERISA benefits, but it is "intertwined" with such, and it bears noting that in other settings, too, the Sixth Circuit has described back pay as equitable. *See Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 450 (6th Cir. 2002). In fact, in *Coleman*, the court quoted with approval a Fifth Circuit case, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998), for the proposition that back pay could be distinguished from compensatory damages, in the Title VII context, "'as an equitable remedy similar to other forms of affirmative injunctive relief.'" 296 F.3d at 450.

*Bledsoe v. Emery Worldwide Airlines,* 258 F. Supp. 2d 780, 798 (S. D. Ohio 2003).

The second case the court found is an unreported bankruptcy case from the Middle District of Alabama. In *Grady et. al. v. Quantegy, Inc., et.al.*, Case No. 05-80042, Adv. Pro. No. 05-8002 (M.D. Ala. March 17, 2006), the chapter 11 creditors committee filed a motion to dismiss an adversary proceeding containing WARN claims contending that the adversary was a duplication of the claims process (one of the arguments made in the present case). The committee contended that the claims process was a more efficient

7

method of determining employees' claims than is an adversary proceeding. The Court

stated,

> At first blush, the committees' contention is not without appeal. An objection to a claim is a contested matter governed by Fed. R. Bankr. Proc. 9014. Under that rule, most of the service and discovery rules applicable to adversary proceedings are also applicable to contested matters. Therefore, an adversary proceeding could be unnecessary as merely duplicative of the claims process.
>
> Yet, upon closer review, the court is of the opinion that this adversary proceeding should not be dismissed on that ground. This adversary proceeding is distinctive in that it was filed as a class action. Fed. R. Bankr. Proc. 23 [sic] (governing class actions) is applicable to an adversary proceeding. However, Rule 23 is not applicable to a contested matter. Fed. R. Bankr. Proc. 9014. Though the court can direct that Rule 23 apply to a contested matter, a claim does not become a contested matter unless and until an objection to the claim is filed. The filing of an adversary proceeding enables the creditor to invoke the provisions of Rule 23 without waiting for the debtor to object to its claim. Therefore, an adversary proceeding may be the most expeditious vehicle for processing this claim as a class action.

*Id (Parenthetical in original).*

As noted above Fed. R. Bankr. P. 7001(7) defines an adversary proceeding as including actions for "other equitable relief." Class actions have their roots grounded firmly in equity. The first class action is often considered to be the case of *Discart v. Otes*, 30 Seld. Society 137 (No. 158, P.C. 1309) (1914). One account of this case is as follows:

> Raymond B. Marcin, in "Searching for the Origin of the Class Action," 23 Cath. *U. L. Rev.* 515, 521-523 (1974) has identified the 1309 case of *Discart v. Otes* as the earliest example of a judicially created class action. The case concerned the currency used in the Channel Islands, which lie about 20 miles off the northwestern coast of France.
>
> The Channel Islands, Norman by heritage, became subject to English rule at the time of the Norman Conquest. King Edward I of England granted the islands to Sir Otes Grandison for the term of his life. Otes was not a popular ruler.
>
> "Chief among the islanders' grievances was a confiscatory decree of Sir Otes

8

> insisting that all debts and rents due him or the crown be paid in sound French currency instead of the debased local coinage of the islands," Marcin explains. "The order had the effect of tripling all debts and rents in one fell swoop."
>
> Jordan Discart had served as the king's granger for a year and, as such, had had what amounted to a commission to sell the king's corn. He sold the corn for local money. Alas, when the time came to account to Otes for his sales, Otes insisted on being paid in French currency.
>
> Discart filed a bill with the justices in General Eyre of the Channel Islands — justices with general civil jurisdiction acting "under a direct royal commission to administer justice" — seeking a decree requiring Otes to accept Discart's payment in local money.
>
> Discart was not the only person who wanted to be discharged from his duties to the crown on payment of his accounts to Otes in local money. The justices came up with a novel solution: Pass the buck for making the final decision to the King's Council, but provide that Discart and "all that are in like case with [Discart] are bidden to appear ... before that same Council, either in person or by some one representing them all, to hear its opinion and to receive such judgment as shall there be delivered." Discart v. Otes, 30 Seld. Society 137 (No. 158, P.C. 1309) (1914). Thus, the justices in General Eyre created a class action.

*Susan B. Spence, "Looking Back...In a Collective Way: A short history of class action law," ABA Business Law Volume 11, Number 6, July/August 2002 (Magazine).*[6]

Spence goes on to discuss the derivation of our current Fed. R. Civ. P. 23, which is incorporated in the Bankruptcy Rules, for the purpose of adversary proceedings, by Fed. R. Bankr. P. 7023. She states that "[t]he modern American class action evolved on the equity side of the courthouse. Rule 23, Fed. R. Civ. P. is descended from an equitable exception to the necessary party rule." *Discart* and the case law that followed was adopted by American courts from English law and eventually was codified as a rule in 1842 when the U.S. Supreme Court promulgated Federal Equity Rule 48, which was interpreted by courts as providing for class suits. *Id.* Equity rule 48 later became Equity Rule 38 and in 1937 Rules

---

[6] http://www.abanet.org/buslaw/blt/2002-07-08/spence.html (Retrieved June 27, 2008).

9

of Law and Equity were combined to create the Federal Rules of Civil Procedure. "In 1937, the Supreme Court adopted the Rules of Civil Procedure, merging law and equity. The advisory committee said that Rule 23, 'Class Actions,' was a 'substantial restatement of Equity Rule 38.'" *Id.* Thus, it is clear that class action relief is equitable in nature, and as such, under the present circumstances, this adversary proceeding should not be dismissed, at least at this early stage. Defendant also notes that Fed. R. Bankr. P. 7001(1), relating to adversaries that seek the recovery of money or property, has long been limited to recoveries that could not be established through the proof of claim process.[7] The Court strongly embraces this principle.

Furthermore, as a practical matter, if the Court were to dismiss the current adversary more issues may arise based on the new Bankruptcy Rule 3007(b). New Fed. R. Bankr. P. 3007(b), effective December 1, 2007, states, "Demand for Relief Requiring an Adversary Proceeding. A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Collier on Bankruptcy states this about the new rule,

> Subdivision (b) of Rule 3007 was added in 2007. This subdivision of the rule replaces what used to be the last sentence of Rule 3007 (now subdivision (a)), which read: "If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."
>
> The effect of the addition of subdivision (b) in substitution for the predecessor language does not appear to be significant. The newer provision makes clear that a party may object to a claim separately from an adversary proceeding commenced against the claimant. However, as Rule 7013,

---

[7] The circumstances of this action are rare. This determination is not an open invitation for creditors to bypass the claims process by claiming class status. The underlying bankruptcy proceeding is a Chapter 11 case. In this adversary the potential class (class certification has not been considered to date and may in fact fall in another direction) is composed of members with contested contingent unliquidated claims. An adversary may be the more appropriate vehicle to determine the allowance of the rather large number of claims. I do not prejudge that class membership may include those who have not availed themselves of the claims process.

10

> respecting counterclaims, does not apply in contested matters, the possibility of pursuing each form of relief independently existed under Rule 3007 before the 2007 amendments. Whether a claim objection which includes a request for affirmative relief against the claimant may be recharacterized by the court as an adversary proceeding, rather than being subject to dismissal in whole or in part, is a more difficult question given the mandatory language of Rule 3007(b). At a minimum, use of the words "shall not" should result in greater caution by practitioners to utilize adversary proceedings when appropriate.

*9-3007 Collier on Bankruptcy-15th Edition Rev. P 3007.02(Internal citations omitted).*

Courts have had little opportunity to consider the amended rule and the issue *Collier* touches upon. Thus, while it is uncertain how objections to claims containing affirmative relief will be treated, it is quite clear that claims objections can be combined with issues requiring adversary proceedings. For example, in a claims objection a debtor in possession might ask that the Court reduce a WARN Act award for equitable reasons, thus coming within the scope of Fed. R. Bankr. P. 7001(7).

Given the discussion above, not only is there "other equitable relief" present that satisfies Fed. R. Bankr. P. 7001(7), but allowing the cause of action to go forward as an adversary, at least until such time as class certification decisions are made, seems most efficient for both parties. Class members will get a resolution to their claims sooner and Defendant will be able to determine the liability it has, if any, in regards to the WARN Act claims at an earlier date and proceed accordingly.

One other option is to allow a "class proof of claim." Class claims are not created nor addressed by the Bankruptcy Code or Rules. Rather, class claims are judicially created for efficiency, and the procedure for allowing such claims can be quite involved. Fed. R. Bankr. P. 7023 does not apply to contested matters. However, as noted in *Grady, Supra* the Court can order Rule 7023 to apply to contested matters if claimants file a motion asking for

11

such relief. *See In re Computer Learning Ctrs., Inc.*, 344 B.R. 79, 87 (Bankr. E.D. Va. 2006)("[A] class proof of claim is not permissible without an order making Rule 7023 applicable and that the proponent of the class proof of claim must timely obtain that order").

### *Conclusion*

Based on the above discussion, the Court's finding that class action relief is equitable in nature satisfying Fed. R. Bankr. P. 7001(7), and based on principles of judicial economy and judicial efficiency, Defendant's Motion is DENIED.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
July 30, 2008